ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| HERRACIAL GUNN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 306-039 |
| | ) | |
| DON JARRIEL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Dodge State Prison located in Chester, Georgia, when this case commenced, filed the above-captioned *pro se* case in the Middle District of Georgia pursuant to 42 U.S.C. § 1983. Plaintiff paid the $350.00 filing fee. The Honorable Claude W. Hicks, Jr., United States Magistrate Judge, transferred the case to this District.[1] (Doc. no. 3, p. 2). The matter is now before the Court on a motion to continue filed by Plaintiff in response to this Court's Order directing Plaintiff to show cause why this case should not be dismissed without prejudice based on the failure to timely effect service. (Doc. no. 22). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's motion to continue (doc. no. 22) be **DENIED** and that Defendants Jarriel, McNeal, Sanders, Kemp, Gay, and "Jane Doe" be **DISMISSED** without prejudice from the case. The Court further **REPORTS** and **RECOMMENDS** that Plaintiff's claims against Defendants Georgia Department of

---

[1]Although Plaintiff filed this case in the Middle District of Georgia, his complaint raises claims against defendants located at Dodge State Prison in Chester, Georgia, which is located in the Southern District of Georgia.

Corrections ("GDC") and Medical College of Georgia ("MCG") be **DISMISSED** for failing to state a claim upon which relief can be granted and that this civil action be **CLOSED**.

## I. BACKGROUND

*Liberally* construing Plaintiff's complaint and amended complaint, the Court finds the following.[2] Plaintiff names as Defendants: (1) Don Jarriel, Head Warden, Dodge State Prison ("DSP"); (2) David McNeal, Deputy Warden of Security, DSP; (3) Tina Sanders, Deputy Warden of Care and Treatment, DSP; (4) Tonya Kemp, Health Services Administrator, DSP; (5) Sharon Gay, Registered Nurse, DSP; (6) "Jane Doe," DSP; (7) GDC; and (8) MCG. (Doc. nos. 1 & 23).

Plaintiff alleges that Defendants conspired to violate his constitutional rights under the First, Eighth, and Fourteenth Amendments. (Doc. no. 1, pp. 6-10). These alleged violations stem from a previous surgery that Plaintiff had at Taylor Regional Hospital on November 16, 2005. (Id. at 6). According to Plaintiff, the orthopedic specialist that performed the surgery provided Plaintiff with a post-surgery treatment plan that was completely disregarded by the DSP medical staff. (Id. at 7). For example, Plaintiff alleges that he received his first follow-up appointment seven (7) weeks after the surgery, contrary

---

[2]In a simultaneously filed Order, the Court addresses Plaintiff's motion to amend and supplement pleadings that requests that the Court add Defendants GDC and MCG to the complaint. (Doc. no. 21). The Court notes, however, that Plaintiff has not utilized the proper procedure to amend his complaint. Rather than submitting an amended complaint that recounts all claims that he wishes the Court to consider as a basis for awarding the relief sought, Plaintiff simply submitted a one-page document that lists the names of the new Defendants, alleges the grounds upon which relief should be granted, and requests the monetary relief sought in the original complaint. (Doc. no. 23). However, the Court will consider the original complaint (doc. no. 1) and the amended and supplemented complaint (doc. no. 23) together for the purpose of screening Plaintiff's claims.

to the surgeon's order that provided for a follow-up appointment seven (7) days after the surgery. (Id.). Moreover, Plaintiff submits that the prison doctor treating him at that follow-up appointment prescribed a six (6) week exercise program, despite the surgeon's order providing for an eight (8) to twelve (12) week program. (Id.).

Plaintiff states that he filed three (3) grievances concerning his medical treatment, but all were denied for lack of proof. (Id.). Plaintiff asserts that he wrote Defendant Sanders three (3) times to complain about the alleged improper medical care and to request a meeting, but she never responded. (Id.). Next, Plaintiff submits that he wrote Defendant Jarriel to complain about the alleged improper medical care and to ask for help, but he gave the letter to Defendant McNeal, who placed Plaintiff in administrative segregation for seven (7) days. (Id. at 7-8). While in segregation, Plaintiff contends that he wrote the Commissioner's Office by certified mail to request help, but he alleges that neither the prison nor the Post Office have a record of the letter because Defendant "Jane Doe" intercepted it. (Id. at 8). Plaintiff concludes that Defendants entered into a conspiracy to violate his constitutional rights because the prison medical staff provided improper medical care and the other Defendants named in the original complaint attempted to cover up this wrongful act.[3] (Id.). As relief, Plaintiff requests that the Court issue a declaratory judgement stating that Defendants violated his constitutional rights, issue an injunction directing Defendants or their agents to

---

[3]In Plaintiff's amended and supplemented complaint, Plaintiff submits that GDC was responsible for all his medical needs when he was re-injured while in custody. (Doc. no. 23). Furthermore, Plaintiff contends that the GDC contracts with MCG to supply adequate medical care to its detainees. (Id.). Consequently, Plaintiff concludes that GDC and MCG violated his constitutional rights by employing the other named Defendants, who personally participated in the alleged conspiracy to violate his constitutional rights. (See doc. nos. 21 & 23).

3

undertake several actions, award compensatory damages, award punitive damages, and grant such other relief as it may appear the Plaintiff should receive. (Id. at 10-12).

Because Plaintiff is proceeding *pro se*, the Court provided some basic instructions regarding the development and progression of the case on January 22, 2007. (Doc. no. 14). In the instructions, the Court explained that Plaintiff is responsible for serving Defendants and explained how service could be accomplished. (Id. at 2-4). Furthermore, the Court specifically informed Plaintiff that, under Fed. R. Civ. P. 4(m), he had 120 days to effect service. (Id. at 3). However, Plaintiff's original complaint was filed on May 11, 2006, and, therefore, the 120-day period had previously run before Plaintiff paid the entire filing fee and received instructions from the Court. Consequently, the Court granted Plaintiff sixty (60) days from the Court's January 22nd Order to effect service on Defendants. (Id. at 3).

When the 60-day extension lapsed without Plaintiff producing any evidence that Defendants had been served, the Court issued an Order directing Plaintiff to show cause why this case should not be dismissed without prejudice. (Doc. no. 20). In response, Plaintiff filed a motion to amend and supplement pleadings, requesting that the Court add GDC and MCG as Defendants. (Doc. no. 21). Additionally, Plaintiff submitted a one-page amended complaint that listed the names of the new Defendants, alleged the grounds upon which relief should be granted, and requested the monetary relief sought in the original complaint. (Doc. no. 23). Furthermore, Plaintiff filed the instant motion to continue, arguing that a recent ligament transplant surgery had hindered his litigation efforts and requesting the Court to intervene to direct the U.S. Marshal to effect service on Defendants. (Doc. no. 22).

## II. DISCUSSION

**A. Dismissal of Defendants Based on Plaintiff's Failure to Timely Effect Service**

Under the Federal Rules of Civil Procedure, an action shall be dismissed without prejudice as to an unserved defendant, if service of the summons and complaint is not made within 120 days after filing of the complaint or within a time specified by the Court. Fed. R. Civ. P. 4(m). However, with the 1993 amendments to Fed. R. Civ. P. 4(m), courts have discretion to extend the time for service with no predicate showing of good cause. Henderson v. United States, 517 U.S. 654, 662-63 (1996); Horenkamp v. Van Winkle and Co., Inc., 402 F.3d 1129, 1132 (11th Cir. 2005) (permitting extension of 120-day service period, even in absence of good cause). Moreover, if a plaintiff fails to show good cause for failing to timely effect service, a court "must still consider whether any other circumstances warrant an extension of time based on the facts of the case." Lepone-Dempsey v. City of Villa Rica, 476 F.3d 1277, 1282 (11th Cir. 2007). Advisory Committee Note to Rule 4(m) provides some guidance as to factors that may justify an extension of time for service. Such considerations include if a defendant is evading service or if the statute of limitations would bar a re-filed action. Horenkamp, 402 F.3d at 1132-33 (citing Advisory Committee Note to 1993 Amendment to Rule 4(m)).

In this case, the Court is aware of Plaintiff's surgeries. However, Plaintiff has failed to show good cause why Defendants Jarriel, McNeal, Sanders, Kemp, Gay, and "Jane Doe" should not be dismissed without prejudice for failure to effect service, and therefore, the Court must consider whether other circumstances warrant an extension of time for service. Although Plaintiff asserts that the move to Augusta State Medical Prison hindered his ability to litigate,

5

Plaintiff was able to prepare and file several motions since the time that he was informed of the deadline for effecting service. (See doc. nos. 16, 19, 21 & 22). Furthermore, Plaintiff fails to explain why he could not effect service before his recent surgery. Moreover, Plaintiff's filings to date assert improper medical care, retaliation, and conspiracy allegations beginning in November 2005. (Doc. no. 1). Thus, it does not appear that dismissal of these Defendants, without prejudice, will pose a problem under Georgia's two-year statute of limitations that applies to § 1983 claims. See Lawson v. Glover, 957 F.2d 801, 803 (11th Cir. 1987); Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986).

Additionally, the Court notes that the record lacks any evidence that Defendants Jarriel, McNeal, Sanders, Kemp, Gay, and "Jane Doe" are evading service. According to Plaintiff, all Defendants can be served at their respective places of employment. (Doc. no. 21, Handwritten Attach.). Finally, the Advisory Committee Note recognizes that courts should take care to protect *pro se* plaintiffs. Here, the Court afforded Plaintiff a 60-day extended period to effect service and an opportunity to show cause why this case should not be dismissed without prejudice. However, Plaintiff failed to effect service during that period or show good cause why this case should not be dismissed for that failure to effect service.

In sum, Defendants Jarriel, McNeal, Sanders, Kemp, Gay and "Jane Doe" have not been served, the time for effecting service under Rule 4, as well as the 60-day extended period have lapsed, and Plaintiff has failed to show good cause for the failure to effect service. Accordingly, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's motion to continue (doc. no. 22) be **DENIED** and that Defendants Jarriel, McNeal, Sanders, Kemp, Gay, and "Jane Doe" be **DISMISSED** from the case without prejudice. Nelson v. Barden,

145 Fed. Appx. 303, 311 (11th Cir. Aug. 10, 2005) (*per curiam*) (affirming dismissal without prejudice for failure to timely effect service pursuant to Rule 4(m)).

## B.     Screening Plaintiff's Claims Against GDC and MCG

As Plaintiff is not proceeding *in forma pauperis* ("IFP"), his complaint is not subject to 28 U.S.C. § 1915(e)(2)'s screening provision. See Farese v. Scherer, 342 F.3d 1223, 1228 (11th Cir. 2003) ("Logically, § 1915(e) only applies to cases in which the plaintiff is proceeding IFP"). However, because Plaintiff is a prisoner seeking redress against governmental entities, employees, or officers, his complaint is subject to screening under 28 U.S.C. § 1915A, which does not distinguish between IFP plaintiffs and non-IFP plaintiffs. 28 U.S.C. § 1915A; Thompson v. Hicks, 213 Fed. Appx. 939, 942 (11th Cir. 2007) (*per curiam*). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may review Plaintiff's complaint and dismiss the complaint, or any part thereof, if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. See 28 U.S.C. § 1915A.

Based on the allegations in Plaintiff's amended complaint, it appears that GDC and MCG are immune from suit. "The Eleventh Amendment insulates a state from suit brought by individuals in federal court, unless the state either consents to suit or waives its Eleventh Amendment immunity." Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989) (footnote omitted) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)). Furthermore, the Supreme Court has clearly stated that "a suit in which the State or one of its agents or departments is named as the defendant is proscribed by the Eleventh Amendment . . . This jurisdictional bar applies regardless of the nature of the relief sought."

7

Pennhurst State Sch. & Hosp., 465 U.S. at 100 (1984) (citations omitted); see Alabama v. Pugh, 438 U.S. 781, 781-82 (1978) (*per curiam*); Edelman v. Jordan, 415 U.S. 651, 663 (1974). Moreover, 42 U.S.C. § 1983 does not abrogate the sovereign immunity of the states. See Quern v. Jordan, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe . . . that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States."). Thus, 42 U.S.C. § 1983 does not override state sovereign immunity afforded by the Eleventh Amendment.

In this case, GDC is immune from suit. The Supreme Court has stated that "[t]here can be no doubt . . . that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [the State] has consented to the filing of such a suit." Pugh, 438 U.S. at 781. Furthermore, the Eleventh Circuit, citing Pugh, has definitively stated that "[t]he Eleventh Amendment bars [an] action against the Georgia Department of Corrections and Board of Corrections." Stevens, 864 F.2d at 115 (11th Cir. 1989). Thus, Plaintiff's claims against GDC are not viable.

Similarly, MCG, as an instrument of the State of Georgia, is immune from suit. The Supreme Court has explained that the question of whether an entity is immune from suit turns on whether an entity is "treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend." Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977). In determining whether an entity is immune from suit, "[t]he answer depends, at least in part, upon the nature of the entity created by state law." Id.

8

Furthermore, Georgia law is clear that MCG is not an entity that is capable of either suing or being sued. The Georgia Supreme Court has stated, "[T]he power to sue and be sued which originally resided in the Medical College has been taken from that college and vested in the Board of Regents. The trial court did not err in dismissing the Medical College of Georgia as a defendant."[4] McCafferty v. Medical College of Ga., 249 Ga. 62, 65, 287 S.E.2d 171, 174 (1982), *overruled on other grounds by* Self v. City of Atlanta, 259 Ga. 78, 79, 377 S.E.2d 674, 676 (1989) (holding that in any instances in which an entity is given the power "to sue and be sued" that language means only that the entity has the status and capacity to enter our courts, and does not signify a waiver of sovereign immunity against suit); see also Harden v. Adams, 760 F.2d 1158, 1163 (11th Cir. 1985) (finding that state universities are agencies or instrumentalities of the state for purposes of Eleventh Amendment immunity).[5] Thus, Plaintiff's claims against MCG are not viable. Accordingly, the Court **REPORTS** and **RECOMMENDS** that the claims against Defendants GDC and MCG be **DISMISSED** for failing to state a claim upon which relief can be granted.

---

[4] Addressing the issue of immunity shielding the Board of Regents, the District Court has stated that "[t]he Board of Regents is an agency of the State of Georgia." Federov v. Bd. of Regents for the Univ. of Ga., 194 F. Supp. 2d 1378, 1385 (S.D. Ga. 2002). Moreover, the Board of Regents enjoys total immunity from claims under 42 U.S.C. § 1983. Id. at 1386; see also O.C.G.A. § 20-3-36 (2006) ("The applicability of the doctrine of sovereign immunity to the board of regents is reaffirmed, except to the extent that the General Assembly may expressly provide.").

[5] "[A] state is not a person within the meaning of § 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 (1989). Plaintiff has brought this action under 42 U.S.C. § 1983, which applies to "[e]very person" acting under color of state law. GDC and MCG are not "persons" under 42 U.S.C. § 1983. See Will, 491 U.S. at 64. Putting aside the immunity issue, Plaintiff's claims against GDC and MCG, therefore, are not cognizable in this civil rights lawsuit.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's motion to continue (doc. no. 22) be **DENIED** and that Defendants Jarriel, McNeal, Sanders, Kemp, Gay, "Jane Doe" be **DISMISSED** without prejudice from the case. The Court further **REPORTS** and **RECOMMENDS** that Plaintiff's claims against Defendants GDC and MCG be **DISMISSED** for failing to state a claim upon which relief can be granted and that this civil action be **CLOSED**.

SO REPORTED AND RECOMMENDED this 19th day of June, 2007, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE